IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **REGINALD DAILEY,**  )<br>)<br>  Plaintiff,  )<br>)<br>v.  )<br>  )<br>**BP EXPLORATION & PRODUCTION**  )<br>**INC., et al.,**  )<br>  )<br>  Defendants.  )  | **CIVIL ACTION NO.**<br>**1:21-CV-00360-KD-MU-C** |

## ORDER

This case is before the Court on the Motion for Summary Judgment filed by Defendants BP Exploration & Production Inc. and BP America Production Company ("BP"), brief and exhibits in support (Docs. 36, 37, 38), the response filed by Plaintiff Reginald Dailey, medical records, and notices in support (Docs. 42, 44, 46), and BP's reply (Doc. 43). Dailey's motion for a hearing (Doc. 45) is denied. See S.D. Ala. Civ. L.R. 7(h). For the reasons set forth herein, summary judgment is granted in favor of BP.

  I.   Factual and procedural background

Plaintiff Reginald Dailey was employed by BP as a truck driver in 2011 during the Deepwater Horizon oil spill cleanup. (Doc. 1, at 3.) His duties included cleaning, loading, and unloading tanks. (Id.) He filed a Notice of Intent to Sue with the Deepwater Horizon Medical Benefits Claims Administrator. He listed the following conditions allegedly resulting from exposure to toxic chemicals while performing the cleanup work: Sarcoidosis, sialolithiasis, neck pain, shortness of breath, chest pain, and chronic back pain. (Doc. 1-1, at 3.) BP elected not to mediate Dailey's claim and he was instructed to file a Back-End Litigation Option (BELO) lawsuit

pursuant to the "Medical Benefits Class Action Settlement Agreement" (MSA) approved by the United States District Court for the Eastern District of Louisiana. (Id.; Doc. 37, at 3.) It is undisputed that Mr. Dailey is a member of the settlement class for the Medical Benefits Class Action Settlement. (Doc. 37.)

Mr. Dailey's BELO complaint was initially filed in the Middle District of Louisiana, transferred to the Eastern District of Louisiana, and later transferred to this Court (Docs. 1, 14, 25). In his complaint, he alleges that his "symptoms started with a nosebleed, high blood pressure, migraine, [and] headaches" (Doc. 1, at 3) and his "second symptom" was "back pain, shortness of breath, chest pain and neck pain." (Id.) Mr. Dailey alleges that he showed no symptoms until 2011 when he "went to work for BP." (Doc. 42.) He believes that these symptoms are a result of exposure to the chemical Corexit 9500 (Doc. 46.) He claims that BP was negligent by not requiring him to wear a mask (Doc. 1, at 3; Doc. 46) or providing training on the chemicals involved (Doc. 42) which resulted in the development of these medical conditions. (Doc. 1.)

Mr. Dailey has provided his medical records. His medical record from December 28, 2012, shows that he was treated at the emergency department for a headache. (Doc. 42-1.) During this examination, he reported treatment that morning for a nosebleed, which he has experienced in the past, and a headache, but "denie[d] any neck pain or meningeal signs." (Doc. 42-1, at 1.) Mr. Dailey reported a past medical history of Hypertension. (Id.) He was given Lortab during this visit. (Doc. 42-1, at 15.) He was diagnosed with headache, hyperglycemia, and hypertension and was discharged with a recommendation for follow-up at Franklin Clinic for these conditions. (Id. at 3.)

In October 2013, Mr. Dailey was treated for foot pain and diagnosed with gout. (Doc. 42-1, at 20.) He was prescribed two pain medications, a medication to treat his gout, and a hypertension medication. (Id.) In November 2013, he was treated for back pain and hypertension.

The nurse practitioner reported that Mr. Dailey had outpatient records which verified "bulging discs in lumbar area." (Id. at 23.)  In December 2013, Mr. Dailey was treated for "[worsening] migraine, shakes, and musculoskeletal pain" occurring for the past month. (Id. at 25.) He was assessed with "degeneration of intervertebral disc . . . hypertension, malignant . . . headache . . . and anxiety." (Id. at 27.) He was referred for a vision evaluation "ASAP-today." (Id.) He was prescribed medications for back pain, hypertension, migraine pain and anxiety. (Id. at 27.)

II. Standard of Review

"Summary judgment is appropriate where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Williamson v. Brevard County, Fla., 928 F.3d 1296, 1304 (11th Cir. 2019) (citing Fed. R. Civ. P. 56(a)). "The movant bears the burden of presenting pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any that establish the absence of any genuine, material factual dispute." (Id.) (citing Procaps S.A. v. Patheon, Inc., 845 F.3d 1072, 1079 (11th Cir. 2016) (citations and quotations omitted)). The district courts are "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013) (citation omitted).

If the non-movant bears the burden of proof at trial on the dispositive issue, the movant may meet its burden by pointing out the insufficiency of the evidence with respect to an essential element of the non-movant's claims. Celotex v. Catrett, 477 U.S. 317, 325 (1986).  The burden then shifts to the non-movant who must set out specific facts, supported by the evidence, to show that a genuine issue exists. Celotex, 477 U.S. at 324. Thus, if the non-movant fails to make "a

sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323.

III.   Statement of the law

The United States District Court for the Eastern District of Louisiana approved a "Medical Benefits Class Action Settle Agreement (MSA), that would govern any claims from class members affected by the oil spill. (Doc. 37, at 3.) The MSA offers a "Back-End Litigation Option" (BELO) for class members seeking compensation for "Later-Manifested Physical Conditions" (LMPC). Id; see also Jordan v. BP Exploration & Prod. Inc., No. 19-0280, 2020 WL 1639985 (S.D. Ala.)  An LMPC is defined by the MSA as "a physical condition that is first diagnosed…after April 16, 2012, and which is claimed to have resulted from… exposure to oil, other hydrocarbons, or other substances…dispersants and/or decontaminants used in connection with the response activities." Scarbrough v. Exporation & Production, Inc., 2020 WL 3894002 (N.D. Ala. July 10, 2020).

"Under the terms of the MSA, the following need not be proven in litigation: (1) the fact or existence of the MSA or any other settlement to prove liability or the amount of the class member's claim; (2) the alleged fault of BP for the Deepwater Horizon incident; and (3) exposure of the class member to oil, other hydrocarbons, and other substances released due to the Deepwater Horizon spill and/or dispersants and/or decontaminants used in connection with response activities." Adler v. BP Expl. & Prod., Inc., No. 1:19-CV-79-TFM-N, 2020 WL 10319810, at *3 (S.D. Ala. Sept. 1, 2020) (Doc. 38-1, at 71-72, MSA).

"Among the issues that are disputed and may be litigated in a BELO lawsuit are (1) whether the alleged injury was legally caused by the plaintiff's exposure to oil, other hydrocarbons, and other substances released due to the BP/Deepwater Horizon spill and/or dispersants and/or decontaminants used in connection with the response activities, and (2) whether there exist

alternative causes for the plaintiff's alleged injuries." Adler, 2020 WL 10319810, at *3 (Doc. 38-1, at 70-71, MSA).

A plaintiff of a toxic-tort claim must provide reliable expert testimony to establish general and specific causation of the medical condition to the exposure to toxic chemicals. McClain v. Metabolife Int'l Inc., 401 F.3d 1233, 1239 (11th Cir. 2005). General causation is showing "whether an agent increases the incidence of disease in a group and whether the agent caused any given individual's disease." (Id.) The best evidence of this in a toxic tort case is through epidemiology. See Hendrix v. Evenflo Co., Inc., 609 F.3d 1183, 1197 (11th Cir. 2010). Specific causation deals with if the medical condition was caused by exposure to the toxin. See McClain, 401 F.3d at 1239; see also Benkwith v. Matrixx Initiatives, Inc., 467 F. Supp. 1316, 1311 (M.D. Ala. 2006).

IV.     Analysis.

To prevail on his BELO claim, Mr. Dailey must show through expert testimony a relation between his alleged medical diagnosis with the exposure to toxic chemicals in the oil spill cleanup. See McClain, 401 F.3d 1233, at 1237 (11th Cir. 2005); see also Rink v. Cheminova, Inc., 400 F.3d 1286, 1294 (11th Cir. 2005). Causation is an essential element of Mr. Dailey's toxic tort claim and therefore he is required to prove causation through expert testimony. See Rink, 400 F.3d 1286, at 1296.

BP argues that Mr. Dailey has failed to disclose expert testimony to prove that his alleged medical conditions were a result of exposure to oil or chemical dispersants from the Deepwater Horizon cleanup. BP argues that because Mr. Dailey cannot prove an essential element of his claim – that the chemicals to which he was exposed caused his illnesses – it is entitled to judgment in its favor. (Docs. 37, 38.) In response, Mr. Dailey contends that he "does not need an expert medical doctor" to prove causation. (Doc. 44.) He argues that he did not cause his own injury and that his

medical records show his symptoms started after exposure and therefore were caused by the exposure. (Doc. 42.) Mr. Dailey argues that as a result of exposure to the chemical Corexit 9500 (Doc. 46), he now suffers lifelong medical conditions such as Sarcoidosis (Doc. 1, at 3).

Mr. Daily has failed to present sufficient evidence that any of his medical conditions resulted from exposure to the toxic chemicals   Mr. Dailey's opinion is speculation and does not create a genuine dispute for trial.  Under these facts the failure to provide expert testimony is fatal to his claim. See Batchelder v. BP Expl. & Prod., Inc., 2020 WL 1638450 (S.D. Ala. Feb. 11, 2020) (holding that failure to disclose any admissible expert testimony of causation between exposure to toxic chemicals and chronic eczema prevents a toxic tort cause of action.)  The Court finds that BP is entitled to judgment as a matter of law.

V.    Conclusion

For the reasons set forth herein, BP Exploration & Production, Inc's and BP America Production Company's motion for summary judgment is GRANTED.

DONE and ORDERED this the 27th day of May 2022.

> s/ Kristi K. DuBose
> KRISTI K. DuBOSE
> UNITED STATES DISTRICT JUDGE